**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) |
| **v.** | ) |
| | ) **2:18-cr-00122-JDL** |
| **MAURICE DIGGINS and** | ) |
| | ) |
| **DUSTY LEO,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER ON DEFENDANTS' MOTION TO DISMISS THE
SUPERSEDING INDICTMENT**

Maurice Diggins and Dusty Leo are charged in a Superseding Indictment (ECF No. 58) with two counts of committing a hate crime in violation of 18 U.S.C.A. § 249(a)(1) (West 2019) and one count of conspiring to commit a hate crime in violation of 18 U.S.C.A. § 371 (West 2019) and § 249(a)(1). Diggins and Leo move to dismiss the Superseding Indictment (ECF Nos. 89, 92) under Fed. R. Crim. P. 12(b), arguing that § 249(a)(1) is unconstitutional and that the Government failed to certify the prosecution as required by 18 U.S.C.A. § 249(b)(1) (West 2019). For the reasons set forth below, I deny the motion.

**I. BACKGROUND**

On March 1, 2019, a federal grand jury returned a Superseding Indictment against Diggins and Leo, alleging that they "knowingly and willfully combined, conspired, and agreed with each other to commit . . . violations of [18 U.S.C.A. § 249] . . . , by willfully causing bodily injury to [two men] because of their actual and perceived race and color" in the District of Maine on or about April 15, 2018. ECF

No. 58 at 1.  Specifically, the Superseding Indictment alleges that Diggins and Leo approached a Black man on a sidewalk in Portland and struck him in the head, breaking his jaw, while calling him a "nigger." *Id.* at 1–2.  It further alleges that Diggins and Leo approached a second Black man on the same night in a 7-Eleven parking lot in Biddeford and similarly struck him in the head, breaking his jaw, while calling him a "nigger." *Id.* at 2.

On March 4, 2019, the Government filed a document certifying that the prosecution against Diggins and Leo "is in the public interest and necessary to secure substantial justice" under 18 U.S.C.A. § 249(b).  ECF No. 63.  The certification was signed by Eric S. Dreiband, Assistant Attorney General for the Civil Rights Division of the United States Department of Justice, on February 26, 2019—three days before the grand jury returned the Superseding Indictment.

## II.  LEGAL ANALYSIS

Diggins and Leo move to dismiss the Superseding Indictment for two reasons. First, they argue that the federal hate-crime statute they are charged with violating and conspiring to violate, 18 U.S.C.A. § 249(a)(1), is unconstitutional.  Second, they argue that even if the statute is constitutional, the Superseding Indictment must be dismissed because the certification filed by the Government does not satisfy 18 U.S.C.A. § 249(b)(1), which is a prerequisite for prosecution under § 249(a)(1).  Both arguments present questions of first impression in this circuit.  After considering the parties' arguments in their memoranda and at a hearing held on December 5, 2019, I conclude that § 249(a)(1) is constitutional as it applies to Diggins and Leo and that the certification filed by the Government satisfies § 249(b)(1).

**A.** **Constitutionality of 18 U.S.C.A. § 249(a)(1)**

As relevant here, § 249(a)(1) makes it a federal crime to "willfully cause[] bodily injury to any person . . . because of the actual or perceived race, color, religion, or national origin of any person." Congress enacted § 249(a)(1) pursuant to its authority under the Thirteenth Amendment to the Constitution of the United States, which provides:

> Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

> Section 2. Congress shall have power to enforce this article by appropriate legislation.

U.S. Const. amend. XIII; *see* Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act, Pub. L. No. 111-84, § 4702(7−8), 123 Stat. 2190, 2836 (2009).

Section 2 of the Thirteenth Amendment "clothes Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery" in the United States. *The Civil Rights Cases*, 109 U.S. 3, 20 (1883). "Congress has the power under the Thirteenth Amendment rationally to determine what are the badges and the incidents of slavery. . . ." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 440 (1968). Therefore, "if Congress rationally determines that something is a badge or incident of slavery, it may broadly legislate against it through Section 2 of the Thirteenth Amendment." *United States v. Hatch*, 722 F.3d 1193, 1201 (10th Cir. 2013), *cert. denied*, 572 U.S. 1018 (2014); *see also Griffin v. Breckenridge*, 403 U.S. 88, 104−05 (1971); *United States v. Metcalf*, 881 F.3d 641, 644−45 (8th Cir. 2018), *cert. denied*, 139 S.Ct. 412 (2018); *United States v. Cannon*, 750 F.3d 492, 499−500

(5th Cir. 2014), *cert. denied*, 574 U.S. 1029 (2014); *United States v. Allen*, 341 F.3d 870, 884 (9th Cir. 2003), *cert. denied*, 541 U.S. 975 (2004); *United States v. Nelson*, 277 F.3d 164, 185 (2d Cir. 2002), *cert. denied*, 537 U.S. 835 (2002).   Thus, in *Jones*, the Supreme Court upheld 42 U.S.C. § 1982, which "prohibit[s] all racial discrimination, private and public, in the sale and rental of property," finding that Congress had rationally designated such discrimination a badge and incident of slavery.  *Jones*, 392 U.S. at 437−44.

Here, § 249(a)(1) punishes racially motivated violence, and Congress determined that racially motivated violence is a badge and incident of slavery.  When adopting § 249, Congress explained:

> For generations, the institutions of slavery and involuntary servitude were defined by the race, color, and ancestry of those held in bondage. Slavery and involuntary servitude were enforced, both prior to and after the adoption of the 13th amendment to the Constitution of the United States, through widespread public and private violence directed at persons because of their race, color, or ancestry, or perceived race, color, or ancestry. Accordingly, eliminating racially motivated violence is an important means of eliminating, to the extent possible, the badges, incidents, and relics of slavery and involuntary servitude.

Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act § 4702(7). Diggins and Leo suggest that § 249(a)(1) "exceeds anything related to slavery" and "is not remedial to slavery" because "it addresses bodily injury" motivated by race, not actual enslavement.  ECF No. 111 at 4.  But the Supreme Court squarely rejected this argument in *Griffin*, stating that "the varieties of private conduct that [Congress] may make criminally punishable . . . extend far beyond the actual imposition of slavery or involuntary servitude."  403 U.S. at 105.  Under the expansive view of "badges and incidents" articulated in *Jones* and *Griffin*, Congress's identification of

racially motivated violence as a badge and incident of slavery is "not merely rational, but inescapable." *United States v. Beebe*, 807 F. Supp. 2d 1045, 1052−53 (D.N.M. 2011) (reviewing history and case law related to slavery), *aff'd sub nom. United States v. Hatch*, 722 F.3d 1193 (10th Cir. 2013), *cert. denied*, 572 U.S. 1018 (2014); *see also Cannon*, 750 F.3d at 501−02 (quoting *Hatch*, 722 F.3d at 1206) (same).

Diggins and Leo contend that even if Congress rationally determined that racially motivated violence is a badge or incident of slavery, § 249(a)(1) is not rationally related to abolishing such violence because it is overbroad, encompassing religiously motivated violence as well. But the question of overbreadth is not presented here because the Superseding Indictment alleges only racially motivated violence and not religiously motivated violence. Thus, I do not decide this issue. *See United States v. Raines*, 362 U.S. 17, 21 (1960). As to racially motivated violence, there is no doubt that § 249(a)(1) is rationally related to eradicating such violence, especially given Congress's explicit findings to that effect. *See* Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act § 4702(1−5), (7), (9−10). Thus, I conclude that § 249(a)(1), as applied to Diggins and Leo, falls within the scope of Congress's Thirteenth Amendment enforcement authority and is constitutional under *Jones*.

Diggins and Leo nevertheless contend that § 249(a)(1) is unconstitutional, arguing that *Jones* should not control this case for several reasons. First, Diggins and Leo argue that the Supreme Court disavowed *Jones* by adopting a more limited view of Congressional authority under the Fourteenth Amendment in *City of Boerne v. Flores*, 521 U.S. 507 (1997), and under the Fifteenth Amendment in *Shelby County*

*v. Holder*, 570 U.S. 529 (2013).  Because the Thirteenth, Fourteenth, and Fifteenth Amendments share a common origin and are sometimes collectively referred to as the "Civil War Amendments," *see, e.g.*, *Oregon v. Mitchell*, 400 U.S. 112, 143 (1970) (Douglas, J., concurring in part and dissenting in part), Diggins and Leo assert that the reasoning of *Flores* and *Shelby County* applies equally in the Thirteenth Amendment context, rendering § 249(a)(1) unconstitutional.  However, neither decision purported to analyze the legislation at issue under the Thirteenth Amendment.  Indeed, neither *Flores* nor *Shelby County* even mentioned *Jones* or any other Thirteenth Amendment precedent.[1]  Thus, there is no reason to believe that either decision implicitly overruled *Jones*.  Additionally, "[i]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).  Therefore, *Flores* and *Shelby County* provide no basis for disregarding *Jones*, which is binding precedent.

Second, Diggins and Leo argue that *Jones*, which upheld a civil statute prohibiting racial discrimination in the sale or rental of property, is limited to the civil context and thus does not apply to criminal statutes such as § 249(a)(1).  But

---

[1] At oral argument, counsel for Diggins and Leo noted that *Flores* and cases construing it, including *United States v. Morrison*, 529 U.S. 598 (2000), rely upon the *Civil Rights Cases*, 109 U.S. 3 (1883), which is Thirteenth Amendment precedent.  However, the *Civil Rights Cases* analyzed the challenged legislation separately under both the Thirteenth Amendment and the Fourteenth Amendment.  *Compare id.* at 10–19 (discussing Section 5 of the Fourteenth Amendment) *with id.* at 20–25 (discussing Section 2 of the Thirteenth Amendment).  The Court explained that the scope of Congress's authority differs under each Amendment.  *See id.* at 23–24.  Both *Flores* and *Morrison* cite only to portions of the *Civil Rights Cases* discussing the Fourteenth Amendment, which have no application here.

6

Diggins and Leo do not point to any authority supporting the proposition that civil and criminal legislation should be treated differently under the Thirteenth Amendment, and the relevant case law rejects such a distinction.  The Supreme Court has explicitly stated that Congress has the power to make badges and incidents of slavery "criminally punishable," *Griffin*, 403 U.S. at 105, and three circuits have applied the *Jones* standard to uphold another criminal statute, 18 U.S.C.A. § 245(b)(2)(B).  *See Allen*, 341 F.3d at 884; *Nelson*, 277 F.3d at 190−91; *United States v. Bledsoe*, 728 F.2d 1094, 1097 (8th Cir. 1984), *cert. denied*, 469 U.S. 838 (1984); *see also United States v. Comstock*, 560 U.S. 126, 136 (2010) (recognizing that "Congress routinely exercises its authority to enact criminal laws in furtherance of . . . its enumerated powers," including its power "to enforce civil rights" (citing U.S. Const. amend. XIII)).

Diggins and Leo further assert that extending *Jones* to uphold the criminal statute at issue here would violate the Tenth Amendment by transferring the police power, which is reserved to the states, to the federal government.  The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.  By its text, the Tenth Amendment permits the federal government to exercise powers when they are "delegated to [it] by the Constitution."  Because the Thirteenth Amendment grants Congress the authority to pass § 249(a)(1), as discussed above, the powers encompassed in § 249(a)(1) are "delegated" to the federal government by the Constitution and are thus not reserved to the states under the Tenth Amendment.

*See Hatch*, 722 F.3d at 1202 (quoting *New York v. United States*, 505 U.S. 144, 156 (1992)).

Finally, Diggins and Leo contend that, even if extending *Jones* to the criminal context does not violate the Tenth Amendment, it contravenes fundamental principles of federalism by permitting the federal government to "usurp" police power from the states.  ECF No. 89 at 13.  But § 249(a)(1) does not usurp or otherwise interfere with the states' power to prosecute racially motivated violence.  It merely makes a federal prosecution available in addition to any state prosecution.  This arrangement is "commonplace under the dual-sovereign concept and involve[s] no infringement per se of states' sovereignty in the administration of their criminal laws." *United States v. Bunnell*, 106 F. Supp. 2d 60, 66 (D. Me. 2000) (quoting *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997)).

Nor does upholding § 249(a)(1) effectively grant Congress a "plenary police power that would authorize enactment of every type of legislation," as Diggins and Leo suggest.  ECF No. 89 at 14−15 (quoting *United States v. Lopez*, 514 U.S. 549, 566 (1995) and collecting additional authorities).  Because § 249(a)(1) addresses only racially motivated violence, its scope is limited and any intrusion on state sovereignty is minor.  *See Hatch*, 722 F.3d at 1206; *see also United States v. Henery*, 60 F. Supp. 3d 1126, 1130 (D. Idaho 2014) (discussing *Hatch*); *cf. Nelson*, 277 F.3d at 185−86.[2]

---

[2] Contrary to Diggins and Leo's argument, § 249(a)(1) is constitutional regardless of whether the certification requirement contained in § 249(b)(1) effectively limits the exercise of federal prosecutorial power.  *See Hatch*, 722 F.3d at 1207−08.  As such, I do not examine the effectiveness of the certification requirement here.

For these reasons, I apply *Jones* as binding precedent and find that Congress properly exercised its authority under Section 2 of the Thirteenth Amendment in enacting § 249(a)(1).[3]

## B.    Sufficiency of Certification under 18 U.S.C.A. § 249(b)(1)

Diggins and Leo further argue that, even if § 249(a)(1) is constitutional, the Superseding Indictment must be dismissed because the Government did not comply with § 249(b)(1)'s certification requirement.  Section 249(b)(1) provides:

> No prosecution of any offense described in this subsection may be undertaken by the United States, except under the certification in writing of the Attorney General, or a designee, that
> > (A) the State does not have jurisdiction;
> > (B) the State has requested that the Federal Government assume jurisdiction;
> > (C) the verdict or sentence obtained pursuant to State charges left demonstratively unvindicated the Federal interest in eradicating bias-motivated violence; or
> > (D) a prosecution by the United States is in the public interest and necessary to secure substantial justice.

Here, the Government produced a written certification that Diggins and Leo's prosecution was "in the public interest and necessary to secure substantial justice." ECF No. 63.  The certification was signed by Eric S. Dreiband, Assistant Attorney General for the Civil Rights Division, three days before the Superseding Indictment was issued.  The Assistant Attorney General for the Civil Rights Division is the Attorney General's designee with respect to § 249 certifications.  *See* 28 C.F.R. § 0.50(n).  Thus, the certification appears sufficient on its face.  Nevertheless, Diggins

---

[3] Accordingly, I do not consider whether § 249(a)(1) is also authorized under the Commerce Clause or the Fourteenth Amendment.

and Leo contend that it is insufficient because there is "no evidence beyond a signature line" that Dreiband is the Assistant Attorney General for the Civil Rights Division or that Dreiband is the person who signed the certification.  ECF No. 111 at 6.  At oral argument, Diggins and Leo suggested that a § 249(b)(1) certification is insufficient unless supported by a jurat, a form of oath or affirmation by a signatory as to the truthfulness of a document's contents.  But a jurat is not required by § 249(b)(1), and absent any evidence suggesting that this certification contains misrepresentations about the signatory, I will not impose procedural requirements upon the Government not contemplated by the statute.  Because the certification on its face satisfies § 249(b)(1), I conclude that it is procedurally sound.  *See United States v. Maybee*, No. 3:11-cr-30006-002, 2013 WL 3930562, at *2 (W.D. Ark. July 30, 2013) (approving a similar § 249(b)(1) certification).

Diggins and Leo further argue that the certification is deficient because it is not supported by a record explaining why the Assistant Attorney General deemed this prosecution "in the public interest and necessary to secure substantial justice." Thus, Leo and Diggins seek substantive review of the § 249(b)(1) certification. Although this is a matter of first impression in this Circuit, the First Circuit determined in *United States v. Smith*, 178 F.3d 22 (1st Cir. 1999), that certifications issued under a similar statute, 18 U.S.C. § 5032, are substantively unreviewable. *Id.* at 25−26, 26 n.2.  In *Smith*, the Government certified that there was a "substantial Federal interest" in the defendant's prosecution under § 5032, and the defendant sought substantive review of the certification.  *Id.* at 25 (quoting § 5032).  The district court denied review, and the First Circuit affirmed, citing the text, structure, and

legislative history of § 5032. *Id.* at 25−26. The First Circuit further explained that the certification was similar to an ordinary charging decision, which "falls squarely within the parameters of prosecutorial discretion that is unreviewable." *Id.* at 26 (alterations omitted) (quoting *United States v. I.D.P.*, 102 F.3d 507, 511 (11th Cir. 1996)).

Though § 249 is not identical to § 5032, it is similar in important respects. Just as § 5032(3) permits the prosecution of a juvenile for a violent felony upon a certification that such prosecution promotes "a substantial Federal interest," § 249(b)(1)(D) permits a hate-crime prosecution upon a certification that it is "in the public interest and necessary to secure substantial justice." Neither statute "articulate[s] any standards for determining" when these conditions are met, and neither "specifically provide[s] for judicial review of a certification." *Smith*, 178 F.3d at 25. These structural and textual similarities suggest that § 249(b)(1) certifications, like § 5032 certifications, are "unreviewable act[s] of prosecutorial discretion." *Id.* at 26. Every court considering this issue to date has similarly found the two statutes sufficiently alike to apply § 5032 precedent in the context of § 249(b)(1) certifications. *See United States v. Beckham*, No. 3:18-cr-00075-1, 2019 WL 2869189, at *2 (M.D. Tenn. July 3, 2019); *United States v. Hill*, No. 3:16-cr-00009-JAG, 2018 WL 3872315, at *3−5, *4 n.5 (E.D. Va. Aug. 15, 2018), *rev'd on other grounds*, 927 F.3d 188 (4th Cir. 2019); *United States v. Jenkins*, 909 F. Supp. 2d 758, 773−74 (E.D. Ky. 2012).

Diggins and Leo do not point to anything in the text, structure, or legislative history of § 249 to distinguish it from § 5032, nor do they attempt to otherwise distinguish this case from *Smith*. Instead, they contend that the mere existence of

the certification requirement compels substantive review because without review, certification does not meaningfully limit prosecutorial discretion as Congress intended. However, the First Circuit implicitly rejected this argument in *Smith* by finding § 5032 certifications unreviewable. Moreover, this argument speculates as to Congress's intent, failing to account for the equally plausible explanation that Congress believed the certification process alone would meaningfully check prosecutorial discretion by subjecting local prosecutors' judgments to the oversight of the Assistant Attorney General for the Civil Rights Division. I am not persuaded that denying substantive review contravenes Congress's intent, especially given that Congress could have explicitly provided for judicial review and did not do so.

Finally, Diggins and Leo assert that substantive review is available under *Marbury v. Madison*, 5 U.S. 137, 177 (1803), and *McLaughlin v. Hagel*, 767 F.3d 113, 118 (1st Cir. 2014), but both cases are inapposite. Though both cases indicate that substantive review of executive action is sometimes available in civil disputes, neither refutes the well-settled principle that "the decision to prosecute is particularly ill-suited to judicial review." *Smith*, 178 F.3d at 26 (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). Thus, I conclude that *Smith* controls, and I decline to review the reasons underlying the Government's decision to certify this prosecution under § 249(b)(1). *See Smith*, 178 F.3d at 26; *see also Maybee*, 2013 WL 3930562, at *3; *Jenkins*, 909 F. Supp. 2d at 774.

## III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Defendants' Motion to Dismiss the Superseding Indictment (ECF No. 89) is **DENIED**.

**SO ORDERED.**

Dated:  December 30, 2019

_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**